**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

WAYNE A. FISHER, JR.,

Plaintiff,

-against-

EQUIFAX INFORMATION SERVICES LLC,
TRANS UNION LLC,
AMERICAN EXPRESS NATIONAL BANK,
CAPITAL ONE, N.A.
JPMORGAN CHASE BANK, N.A.,
NAVY FEDERAL CREDIT UNION,
UPSTART NETWORK, INC.,

Defendants.

# COMPLAINT
# JURY TRIAL DEMANDED

## PRELIMINARY STATEMENT

1.Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit information in a manner that is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.

2.The FCRA requires consumer reporting agencies and furnishers of information to follow reasonable procedures to assure maximum possible accuracy of reported information, to

conduct prompt and reasonable reinvestigations of disputed information, and to correct or delete information that is inaccurate, incomplete, or unverifiable.

3.Notwithstanding these obligations, Defendants reported and continued to report inaccurate information concerning Plaintiff after Plaintiff disputed that information, causing Plaintiff concrete and particularized harm, as set forth in detail below.

## A QUICK BACKGROUND ON CREDIT REPORTING

4.Credit reporting is a fact of modern life. Plaintiff, like every other consumer, has no say in whether private companies such as Defendants Equifax and Trans Union compile, maintain, and sell credit reports concerning him to the businesses that purchase them, commonly called "users" of consumer reports.

5.There are technical distinctions between a "consumer report" and a "consumer disclosure," but for simplicity Plaintiff uses the ordinary term "credit report" throughout this Complaint — the same term used on www.AnnualCreditReport.com, the website the federal government required Equifax, Experian, and Trans Union to establish so that consumers could obtain their free reports.

6.Plaintiff's only protection is the law's guarantee that credit reporting be done accurately and completely. Defendants Equifax and Trans Union are not permitted to report false information, and they are not permitted to report incomplete information. Because credit reports, and the credit scores derived from them, profoundly affect a consumer's ability to obtain credit, employment, security clearances, and housing, whether by purchase or rental, accuracy and completeness are essential. Congress recognized as much when it enacted the FCRA, declaring the need "to ensure that consumer reporting

agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

## THE DISPUTE METHOD OF CORRECTING INACCURATE INFORMATION UNDER THE FCRA

7.When a consumer such as Plaintiff discovers false or incomplete information on his credit reports, the consumer has the right to dispute that information with Equifax, Trans Union, and Experian.

8.The consumer disputes the information — by telephone, online, by fax, or by mail — and asks Equifax, Trans Union, and Experian to investigate so that the information is corrected, if possible, or deleted. Defendants Equifax and Trans Union must then notify the furnisher of the information of the dispute within the time the FCRA allows. A failure to give that notice is itself a violation of the FCRA.

9.Defendants Equifax and Trans Union must also conduct their own reasonable investigation of the dispute, examining all information they have or can reasonably obtain to assist that investigation, and must correct information shown to be inaccurate or incomplete, or delete the account entirely where it is inaccurate, incomplete, or cannot be verified.

## STATUTORY FRAMEWORK

10.The FCRA requires consumer reporting agencies to follow reasonable procedures to assure maximum possible accuracy of the information they report, and to conduct a reasonable reinvestigation of disputed information that a reasonably prudent person would undertake under the circumstances. 15 U.S.C. §§ 1681e(b), 1681i; Suluki v. Credit One Bank, N.A., 138 F.4th 709, 720 (2d Cir. 2025).

11.The FCRA further requires that a furnisher which receives notice of a dispute conduct its own reasonable investigation, report the results to the consumer reporting agency, and correct, delete, or permanently block information it cannot verify. 15 U.S.C. § 1681s-2(b); Longman v. Wachovia Bank, N.A., 702 F.3d 148, 151 (2d Cir. 2012). A plaintiff asserting a claim against a furnisher for failure to conduct a reasonable investigation must also show that a reasonable investigation would have led to a different result. Suluki, 138 F.4th at 720–21. The specific duties of each Defendant, and the manner in which each breached them, are set forth below.

## JURISDICTION AND VENUE

12.This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p because this action arises under the laws of the United States.

13.Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this district and a substantial part of the events giving rise to these claims occurred in this district.

## PARTIES

14.Plaintiff Wayne A. Fisher, Jr. is a natural person residing in Ossining, New York, within this District.

15.Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

16.Defendant EQUIFAX INFORMATION SERVICES LLC is a Georgia limited liability company with its principal place of business in Atlanta, Georgia, and regularly conducts business in this district.

17. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f), in that it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports.

18. Defendant TRANS UNION LLC is a Delaware limited liability company with its principal place of business in Chicago, Illinois, and regularly conducts business in this district.

19. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f), in that it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports.

20. Experian Information Solutions, Inc. ("Experian") is a nationwide consumer reporting agency that also prepared and furnished consumer reports concerning Plaintiff during the relevant period. Experian is not a defendant in this action; its independent reporting is referenced at various points in this Complaint solely as corroborating, non-party evidence bearing on the claims against the Defendants named above.

21. Defendant AMERICAN EXPRESS NATIONAL BANK is a national banking association with its principal place of business in Sandy, Utah, and regularly conducts business in this district.

22. American Express is a "furnisher of information" within the meaning of 15 U.S.C. § 1681s-2, in that it regularly and in the ordinary course of business furnishes information relating

to its consumer accounts to one or more consumer reporting agencies, and furnished the information at issue in this action to Experian, Equifax, and Trans Union.

23. Defendant CAPITAL ONE, N.A. is a Delaware state-chartered bank with its principal place of business in Greenwood, Delaware, and regularly conducts business in this district.

24. Capital One, N.A. is a "furnisher of information" within the meaning of 15 U.S.C. § 1681s-2, in that it regularly and in the ordinary course of business furnishes information relating to its consumer accounts to one or more consumer reporting agencies, and furnished the information at issue in this action to Experian, Equifax, and Trans Union. In this matter it has reported using the name Discover as Capital One purchased Discover Card.

25. Defendant JPMORGAN CHASE BANK, N.A. is a national banking association with its principal place of business in Columbus, Ohio, and regularly conducts business in this district.

26. Chase is a "furnisher of information" within the meaning of 15 U.S.C. § 1681s-2, in that it regularly and in the ordinary course of business furnishes information relating to its consumer accounts to one or more consumer reporting agencies, and furnished the information at issue in this action to Experian, Equifax, and Trans Union.

27. Defendant NAVY FEDERAL CREDIT UNION is a federally chartered credit union with its principal place of business in Vienna, Virginia, and regularly conducts business in this district.

28. Navy Federal is a "furnisher of information" within the meaning of 15 U.S.C. § 1681s-2, in that it regularly and in the ordinary course of business furnishes information relating to

its consumer accounts to one or more consumer reporting agencies, and furnished the information at issue in this action to Experian, Equifax, and Trans Union.

29. Defendant UPSTART NETWORK, INC. is a Delaware corporation with its principal place of business in San Mateo, California, and regularly conducts business in this district.

30. Upstart is a "furnisher of information" within the meaning of 15 U.S.C. § 1681s-2, in that it regularly and in the ordinary course of business furnishes information relating to its consumer accounts to one or more consumer reporting agencies, and furnished the information at issue in this action to Equifax and Trans Union. Plaintiff does not allege that Upstart furnished the information at issue to Experian.

31. The reports at issue in this action are "consumer reports" as defined by 15 U.S.C. § 1681a(d), in that they contain information bearing on Plaintiff's credit worthiness, credit standing, and credit capacity, and were used or expected to be used in connection with transactions primarily for personal, family, or household purposes.

## FACTUAL ALLEGATIONS

32. The accounts at issue were incurred primarily for personal, family, and household purposes.

33. At all relevant times, Plaintiff was experiencing financial stress. He needed a loan and a mortgage for family and household purposes, and to help pay off his remaining debt through a debt-negotiation program he had enrolled in with Beyond Finance.

34. He reviewed his credit report and discovered inaccuracies and inconsistencies, including inaccurate account balances on accounts he had already settled, or was actively resolving, through that Beyond Finance debt-negotiation program.

35. Plaintiff disputed the completeness and accuracy of every account identified below with inaccurate and incomplete information through the consumer reporting agencies on or about June 14, 2026.

36. The day after his dispute, on or about June 15, 2026, Plaintiff applied for a $700,000 mortgage with Rocket Mortgage.

37. His information was disseminated to known and unknown creditors and lenders.

38. Plaintiff was denied mortgage credit by Rocket Mortgage. Rocket Mortgage, LLC's written denial notice, dated July 15, 2026 (Loan No. 3592419296), states the reason for denial as "Credit History: Insufficient credit," cites a credit score of 590 obtained from Trans Union, and identifies as the key adverse factors "too many revolving accounts" and "balances are too high on your bank revolving or all revolving Credit History accounts" — the same categories of harm caused by the inflated, duplicated, and inconsistently reported revolving-account balances described throughout this Complaint. Trans Union's own credit disclosure confirms Rocket Mortgage requested and received Plaintiff's Trans Union credit report on July 15, 2026, the same date as the denial notice — one day after the 30-day reinvestigation deadline triggered by Plaintiff's June 14, 2026 dispute, described below, had already passed without correction of the disputed inaccuracies.

39. Because this denial occurred after Plaintiff's June 14, 2026 dispute and after the FCRA's 30-day reinvestigation deadline had passed without correction of the disputed inaccuracies, it bears on all Defendants' reinvestigation duties under 15 U.S.C. §§ 1681i and 1681s-2(b), rather than on the consumer reporting agencies' independent,

pre-dispute duty under § 1681e(b). See Suluki v. Credit One Bank, N.A., 138 F.4th 709, 720–21 (2d Cir. 2025) (reinvestigation liability requires a causal link between the deficient investigation and the harm).

40. The consumer reporting agencies notified the furnishers to reinvestigate pursuant to 15 U.S.C. § 1681i.

41. Each furnisher has a duty under 15 U.S.C. § 1681s-2(b) to reinvestigate and to update or delete the account if it cannot be verified.

42. Instead, the furnishers failed to reinvestigate, and some failed to mark the accounts as disputed.

43. Around August 2026, more than thirty days after the June 14, 2026 dispute, Plaintiff needed a mortgage, credit, and a loan for family and household purposes.

44. On or about August 4, 2026, Plaintiff applied for credit with Capital One, for a $75,000 loan with Upstart — the maximum loan amount permitted on Upstart's application, which Plaintiff selected — and for credit with OneMain Financial.

45. His information was disseminated to known and unknown creditors and lenders.

46. Capital One extended Plaintiff only $1,000 in credit — a modest amount given that Plaintiff's credit file reflected years of established credit history rather than a new or thin file — and Plaintiff believed, based on that established history, that he should have qualified for materially more credit than he was extended. Upon information and belief, Capital One's decision to extend only this modest amount was caused in whole or in part by Defendants' continued reporting, as of August 4, 2026, of the inaccurate and incomplete

information Plaintiff had disputed on June 14, 2026 — information that should have been corrected within the FCRA's 30-day reinvestigation period but was not. Capital One did not state any reason for extending only $1,000, and Plaintiff has not received a written notice from Capital One, notwithstanding that Capital One, like Rocket Mortgage and Cross River Bank, was required by ECOA and the FCRA to send Plaintiff a written notice disclosing its reasons if its decision was based in whole or in part on a consumer report and extended materially less credit than requested.

47.Plaintiff was also denied credit by Upstart and OneMain Financial due to adverse information being reported on his credit report. Cross River Bank, acting through Upstart, issued a written adverse-action notice dated August 4, 2026, stating that it was "unable to offer... credit on the terms... requested" because "payment history on existing balances as reported in your credit report contributed to the decision," identifying "past due accounts, delinquencies, non-sufficient funds, or checking account closures as reported by consumer reporting agencies," and citing credit limits on Plaintiff's available credit lines — offering Plaintiff only a $2,400, five-year loan against the $75,000 loan he had requested — the maximum amount permitted on Upstart's application, which Plaintiff selected — a shortfall of $72,600, or approximately 97% of the amount sought. The notice cited a Trans Union FICO 8 score of 616 (adverse factors: serious delinquency; proportion of balances to credit limits too high on revolving accounts; number of accounts with delinquency) and a Trans Union VantageScore of 534 and an Equifax VantageScore of 538 (both citing, among other factors, that total balances on revolving accounts were too high). Notably, Plaintiff had already resolved his prior Upstart-serviced debt by the time of this new application, yet Upstart nonetheless cited

derogatory payment history and delinquency information — the same inaccurately and incompletely reported information at issue in this action — in extending him only a fraction of the credit he sought. That same day, on or about August 4, 2026, Plaintiff separately applied to OneMain Financial and was not pre-approved for credit: OneMain's website informed him it could not find him an offer and immediately referred him to MoneyLion instead.

48. Plaintiff reviewed his credit report and discovered that the consumer reporting agencies and furnishers had failed to reinvestigate and correct all errors on his credit report.

49. Like the Rocket Mortgage denial described above, these Capital One, Upstart, and OneMain decisions post-date Plaintiff's June 14, 2026 dispute and the expiration of the statutory reinvestigation period; together, these four post-dispute credit denials and shortfalls are the primary injuries on which Plaintiff's claims under 15 U.S.C. §§ 1681i and 1681s-2(b) against all Defendants rest.

50. American Express furnished information concerning Plaintiff's account to Experian, Equifax, and Trans Union.

51. Discover furnished information concerning Plaintiff's account to Experian, Equifax, and Trans Union.

52. Chase furnished information concerning Plaintiff's account to Experian, Equifax, and Trans Union.

53. Navy Federal furnished information concerning Plaintiff's account to Experian, Equifax, and Trans Union.

54. Upstart furnished information concerning Plaintiff's account to Equifax and Trans Union. Plaintiff does not allege that Upstart furnished the information at issue to Experian.

55. Upon information and belief, Experian, Equifax, and Trans Union sent a dispute to American Express providing all relevant disputed information.

56. Upon information and belief, Experian, Equifax, and Trans Union sent a dispute to Discover providing all relevant disputed information.

57. Upon information and belief, Experian, Equifax, and Trans Union sent a dispute to Chase providing all relevant disputed information.

58. Upon information and belief, Experian, Equifax, and Trans Union sent a dispute to Navy Federal providing all relevant disputed information.

59. Upon information and belief, Equifax and Trans Union sent a dispute to Upstart providing all relevant disputed information.

60. Each such notice triggered the duties imposed on the furnisher defendants by 15 U.S.C. § 1681s-2(b), including the duty to conduct a reasonable investigation of the disputed information and to correct, delete, or permanently block information that could not be verified.

61. More than thirty days elapsed following Plaintiff's June 14, 2026 dispute. The inaccuracies described below were not corrected and continued to be reported.

## **THE ACCOUNTS AT ISSUE**

62. Plaintiff disputed the accounts described below on his Equifax, Trans Union, and Experian reports, and Defendants Equifax and Trans Union neither corrected, completed, nor

deleted them. Upon information and belief, Defendants Equifax and Trans Union knew that the furnishers of the information on these accounts were unreliable, yet failed to weigh that unreliability in conducting whatever investigation they performed. Non-party Experian's independent reporting of these same accounts is referenced throughout this section as corroborating evidence; Plaintiff does not assert a claim against Experian in this action. Where an account is described below as reported inconsistently among the consumer reporting agencies, that inconsistency is alleged in addition to, and not instead of, the specific factual discrepancy identified in the same paragraph — mere inconsistency among bureaus is not itself pled as an independent theory of inaccuracy. See Allen v. Experian Info. Sols., Inc., 2026 U.S. Dist. LEXIS 96889, at *5 (D. Idaho May 1, 2026) (conflicting figures reported by different bureaus can each be accurate as of different reporting dates; a plaintiff must identify which figure is false).

63.For each account below, Plaintiff identifies the specific field reported incorrectly (balance, payment status, or payment history), the specific date range or dollar figure that is wrong, and — where the account was enrolled in a debt-settlement program — the specific third-party settlement records establishing the true figure. This specificity is deliberate. Conclusory assertions that an account "is inaccurate" or a payment history "is incomplete," without more, do not satisfy Rule 8 in an FCRA case. See Dupervil v. Early Warning Servs., LLC, 2026 U.S. Dist. LEXIS 70151, at *5–6 (E.D.N.Y. Mar. 31, 2026) (Kovner, J.) (dismissing §§ 1681e(b) and 1681i claims where the complaint failed to allege what information was actually inaccurate or how the defendant's procedures were unreasonable); Canady v. LCI, Inc., 2026 U.S. Dist. LEXIS 151207, at

*3–4 (C.D. Cal. June 29, 2026) (allegations that track statutory language without supporting facts about what was reported, and why it was wrong, are conclusory under Iqbal). Each paragraph below instead states, account by account, what the report shows, what it should show, and the source for that correction.

**Inaccuracies Reported by Equifax**

64. The Discover account ending XXXXXXXXXXXX3011, as reported by Equifax, is inaccurate and incomplete in that: (a) Equifax's own report, current as of September 4, 2026, omits a 30-days-late entry for April 2026 that both Trans Union (reporting the identical tradeline as ending 1180) and Experian (reporting it as ending 1100) independently and consistently show for that same month; Equifax's seven-year payment grid instead reflects only a single, unrelated 60-days-late entry from August 2021 and is otherwise "paid on time" or "No Data Available" — meaning the furnisher-supplied delinquency data that reached two other consumer reporting agencies was omitted from Equifax's report entirely, not merely mis-graded; Equifax's file separately carries the comment "Account previously in dispute – now resolved by data furnisher," yet the April 2026 omission remains uncorrected; (b) payment history from June 2015 through December 2019 is missing entirely, and payment history from January 2022 through approximately September 2025 is likewise missing entirely notwithstanding continuous, ongoing account activity throughout that period; and (c) the account is reported inconsistently compared to how Discover reported the same tradeline to Trans Union and Experian, in addition to the omission described in (a). Despite Plaintiff's dispute, Equifax has not reinvestigated, updated, or deleted this account to reflect the April 2026 delinquency that Trans Union and Experian both confirm.

65.The American Express account ending XXXXXXXXXXXX6013, as reported by Equifax — the same real-world account American Express reports to Experian as ending 6013 and to Trans Union as ending 3225, confirmed by an identical December 1, 2015 date-opened — is inaccurate and incomplete in that: (a) payment history from December 2015 through December 2019 is missing entirely; (b) the payment progression reported from October 2025 through February 2026 does not follow a logical sequence — Equifax's own report, current as of September 4, 2026, shows the account moving from 90-days-late (November and December 2025) back to 60-days-late (January and February 2026) without the account ever being reported current in the interim, a sequence a correctly reported account cannot produce; both Trans Union and Experian, reporting this identical tradeline, independently and identically report the same months one full severity tier lower — 60 days late in November and December 2025, 30 days late in January and February 2026 — so Equifax's severity findings are contradicted not by one but by both other nationwide consumer reporting agencies; during this same period, Plaintiff had enrolled the account in a debt-settlement program administered by Beyond Finance, under which American Express agreed to resolve the account for $3,385.37 against a pre-settlement balance of $4,815.61, with structured monthly payments of $141.06 beginning November 20, 2025 — a circumstance a reasonable furnisher investigation would have uncovered and reflected in its reporting; (c) the account is reported inconsistently compared to how American Express reported the same tradeline to Trans Union and Experian, in addition to the discrepancy described in (b); and (d) the reported balance is incorrect: as of August 2026, Plaintiff had paid $1,410.60 toward the $3,385.37 settlement amount

negotiated through Beyond Finance, leaving a true balance of $1,974.77 — the exact figure contemporaneously documented by Beyond Finance's own payment ledger for this account, which records each of Plaintiff's ten $141.06 payments as they were made and applied between November 20, 2025 and August 20, 2026. Equifax nonetheless reports this same account at $3,405 as of August 28, 2026, a figure Trans Union and Experian each independently repeat for the identical account and the identical date. A balance that does not credit payments the consumer has actually made and that the settlement administrator has actually recorded is not the current, accurate status of the account that 15 U.S.C. §§ 1681e(b) and 1681s-2(b) require; the $3,405 figure reflects only Plaintiff's original, pre-settlement obligation and ignores the $1,410.60 he has since paid, and is therefore both inaccurate and incomplete.

66. The Chase account ending XXXXXXXXXXXX2141, as reported by Equifax — the same real-world account Chase reports to Experian as ending 4720 and to Trans Union as ending 8449, confirmed by identical balance, credit limit, and date-opened data across all three bureaus — is inaccurate and incomplete in that: (a) payment history from July 2018 through December 2019 is missing entirely; (b) the November 2025 payment entry is missing entirely from Equifax's payment history, interrupting an otherwise continuous month-by-month escalation from 60-days-late (August 2025) to 180-days-late (January 2026); and (c) the account is reported inconsistently compared to how Chase reported the same tradeline to Trans Union and Experian, in addition to the discrepancy in (b). Because Trans Union and Experian independently report this identical account with the same $21,153 balance and $22,800 credit limit, the balance

itself is not shown to be inaccurate; the inaccuracies here are the missing history and the anomalous reporting gap described in (a)-(b).

67. The Navy Federal account ending XXXXXXXXXXXX6070, as reported by Equifax, is inaccurate and incomplete in that: (a) payment history from November 2016 through December 2019 — more than three years of this account's history — is missing entirely: Equifax's own report, current as of September 4, 2026, displays month-by-month payment data only beginning January 2020, notwithstanding the account's own November 14, 2016 open date and Equifax's own disclosure elsewhere on the same report that negative information may be reported for up to seven years and closed accounts retained for up to ten years from the date of last activity; (b) Equifax's own report, current as of September 4, 2026, reflects 60-days-late marks in September 2025 and July 2026, notwithstanding Plaintiff's active, structured settlement payments described in (d) below — marks a reasonable investigation crediting that settlement history would not have left standing; both Trans Union (reporting the identical tradeline as ending 4266) and Experian (reporting it as ending 6095) independently and identically show September 2025 as only 30 days late — a direct, two-bureau-corroborated conflict with Equifax's severity finding for the same month; (c) the account is reported inconsistently compared to how Navy Federal reported the same tradeline to Trans Union and Experian, in addition to the discrepancy in (b); and (d) the reported balance is incorrect: Plaintiff enrolled this account in a debt-settlement program through Beyond Finance, which resolved the balance to a negotiated settlement of $7,037.71 against a pre-settlement balance of $15,157.69, and Beyond Finance's own payment ledger confirms $6,448.71 of that settlement had been paid as

of the filing of this Complaint, leaving a true remaining balance of approximately $589 — a fraction of the $10,593 to $15,157.69 range Equifax, Trans Union, and Experian are each still reporting; Equifax's own 24-month payment history independently corroborates this structured settlement, showing Plaintiff's recurring $589 monthly payments (and two larger payments of $1,121 and $1,178) posted every month from October 2025 through July 2026.

68.The Chase account ending XXXXXXXXXXXX6818, as reported by Equifax — the same real-world account Chase reports to Trans Union as ending 2427, confirmed by identical date-opened, credit-limit, and settlement data — is inaccurate and incomplete in that: (a) the September 2025 payment is reported as 60 days late; by September 2025, Plaintiff had already enrolled this account in a debt-settlement program through Beyond Finance and was making structured payments toward a negotiated settlement of $1,498.00 against a pre-settlement balance of $2,995.13 — payments of $376.00 (10/9/25), $374.00 (11/8/25), $374.00 (12/8/25), and a final $374.00 (12/31/25) — and the account was paid in full and resolved on December 31, 2025, a status Chase's own settlement records confirm and Trans Union's reporting of the same account independently corroborates; (b) notwithstanding that resolution, Equifax's own 24-month balance history shows this same, already-settled account's reported balance climbing back up after briefly reaching $0 in October 2025 — to $679 (November 2025), $925 (December 2025), $1,995 (January 2026), $2,974 (February 2026), and $2,995 (April 2026, matching almost exactly the original $2,995.13 pre-settlement balance) — before Equifax again reported it as $0 in May 2026 under a “Settlement Accepted” code; an account that Chase's own records confirm was paid in full in

December 2025 cannot accurately be reported as re-accruing to its full original balance for the following five months; (c) the account is reported inconsistently compared to how Chase reported the same tradeline to Trans Union and Experian, in addition to the discrepancies in (a)–(b); and (d) the reported balance is incorrect: this account was paid in full and resolved on December 31, 2025, and the correct balance is $0.00, not the balance currently being reported.

69. The Upstart account ending XXXXXXXXXXXX07, as reported by Equifax, is inaccurate and incomplete in that: (a) Equifax reports February 2023, April 2023, September 2024, and August 2025 as 60 days late, while Trans Union's report of this identical account (ending 175) independently and identically shows each of those same four months as only 30 days late — a direct, four-month, bureau-corroborated conflict; (b) the account's own 24-month payment history confirms it was resolved by a $6,433.00 payment posted May 1, 2026 — reducing a fully past-due, charged-off balance of $26,841.00 to $0.00 — under narrative codes reflecting an accepted settlement and a paid charge-off, and Trans Union's report of the identical account independently confirms this same $6,433.00 payment and $0 resulting balance under a matching "Settled-Less Than Full Blnc; Paid in Full/Was a Charge Off" remark, yet Equifax's month-by-month payment-history grid was never updated to reflect that resolution and simply stops reporting data after April 2026 — this $6,433.00 payment was made through Harvest Strategy Group, the collection agency handling this account, rather than through Beyond Finance, which is why it does not appear among Plaintiff's Beyond Finance settlement records for his other accounts; (c) the account is reported inconsistently compared to how Upstart reported the same tradeline to Trans Union, in

addition to the discrepancies in (a)–(b); and (d) the reported balance is incorrect: the correct balance, confirmed by both Equifax's and Trans Union's own records, is $0.00 as of May 2026, not the balance currently being reported.

70.The American Express account ending XXXXXXXXXXXX6323, as reported by Equifax, is inaccurate and incomplete in that: (a) payment history from October 2016 through December 2019 is missing entirely; during this same period, Plaintiff had enrolled the account in a debt-settlement program through Beyond Finance, making structured monthly payments of $35.56 beginning October 20, 2025 toward a negotiated settlement of $853.54 against a pre-settlement balance of $1,696.90; (b) the period from November 2025 through April 2026 is reported as 120 days late; by that time, however, the account had already been placed in the Beyond Finance settlement program described above — a status a reasonable investigation would have identified, and which the account's ultimate payment in full and resolution on June 22, 2026, following a final lump-sum payment of $533.50 that date, confirms; (c) despite that resolution, Equifax's own payment-history grid continues to report the account as 120-days-late through June 2026 and then simply stops reporting any data at all — it was never updated to reflect the payoff that Equifax's own account-status field, current as of July 17, 2026, otherwise confirms; and (d) the reported balance is incorrect: this account was paid in full and resolved on June 22, 2026, and the correct balance is $0.00, not the balance currently being reported.

**Inaccuracies Reported by Trans Union**

71.The American Express account ending XXXXXXXXXXXX3225, as reported by Trans Union — the same real-world account American Express reports to Equifax and

Experian as ending 6013, confirmed by an identical December 1, 2015 date-opened — is inaccurate and incomplete in that: (a) Trans Union's own report, current as of August 28, 2026, lists the monthly payment as $68, which does not reflect the $141.06 structured settlement payment Plaintiff has been paying under the Beyond Finance program since November 20, 2025 — an amount the scheduled-payment field itself confirms was different in the immediately preceding months ($76 in May 2026, $73 in June 2026, $68 in August 2026), none of which match $141.06; (b) payment history from December 2015 through June 2019 is missing entirely; (c) the reported balance of $3,405 (updated August 28, 2026) is incorrect: Plaintiff's contemporaneous Beyond Finance payment ledger for this same account documents ten $141.06 payments made and applied between November 20, 2025 and August 20, 2026, leaving a true current balance of $1,974.77 — a figure the $3,405 balance disregards entirely, understating Plaintiff's actual payment history by roughly $1,430; Equifax's independent reporting of the identical account repeats the same uncredited $3,405 figure rather than correcting it; (d) the payment-history grid confirms a rating of 30 days late (October 2025), 60 days late (November and December 2025), and 30 days late again (January and February 2026) — a delinquency that persisted and only partially cured during the exact months Plaintiff was making agreed structured settlement payments under the Beyond Finance program, without the account ever being reported current; and (e) the account is reported inconsistently compared to how American Express reported the same tradeline to Equifax and Experian, in addition to the discrepancies above. Plaintiff does not dispute the account's "CBG" (canceled by credit grantor) closure remark itself, since

American Express in fact closed the account after Plaintiff stopped paying on it, before he later enrolled it in the Beyond Finance settlement program described above.

72. The American Express account ending XXXXXXXXXXXX7795, as reported by Trans Union — the same account Equifax and Experian report as ending 6323 — is inaccurate and incomplete in that: (a) payment history from October 2016 through June 2019 is missing entirely; (b) the period from November 2025 through May 2026 was, until recently, erroneously reported as 90 days late, notwithstanding Plaintiff's structured settlement payments under the Beyond Finance program described above; (c) Trans Union has since corrected this account: its own payment history shows the account moving from a $1,412 past-due balance (May 2026) to a settled designation (June 2026) to a $0 balance (July 2026), a sequence that closely tracks the Beyond Finance settlement's final payment on June 22, 2026 and confirms the account is now accurately reported as paid, closed, and formerly 90 days past due; (d) that same account, however, continues to be reported by Experian as carrying a $1,412 balance with a stale June 16, 2026 update as of the date of this Complaint — demonstrating that Experian, unlike Trans Union, failed to conduct a reasonable investigation that would have caught what Trans Union's own investigation caught; and (e) the account is reported inconsistently compared to how American Express reported the same tradeline to Equifax, in addition to the discrepancies above.

73. The Discover account ending XXXXXXXXXXXX1180, as reported by Trans Union, is inaccurate and incomplete in that: (a) payment history from June 2015 through May 2024 — approximately nine years — is missing entirely, a gap far larger than the seven-year rolling window Trans Union otherwise appears to display for Plaintiff's

other tradelines, and one Trans Union has not explained; (b) Trans Union's own payment-history grid independently confirms a 30-days-late rating for April 2026, consistent with Experian's reporting of the identical account (ending 1100) for the same month, and directly contradicting Equifax's report of the identical account (ending 3011), which omits any late mark near April 2026 at all, described above; and (c) the account is reported inconsistently compared to how Discover reported the same tradeline to Equifax and Experian, in addition to the discrepancy in (a).

74. The Chase account ending XXXXXXXXXXXX8449, as reported by Trans Union — the same real-world account Chase reports to Equifax as ending 2141 and to Experian as ending 4720, confirmed by an identical $21,153 balance and $22,800 credit limit — is inaccurate and incomplete in that: (a) payment history from July 2018 through July 2019 is not reported at all; and (b) Trans Union's own payment-history grid reports a complete, unbroken monthly progression from 30 days late (August 2025) through 60, 90, and 120 days late (September through November 2025) to charge-off (February 2026), including a November 2025 entry — the exact same month Equifax's report of this identical account omits entirely, described above, confirming that the gap in Equifax's reporting is a defect specific to Equifax rather than an absence in the data Chase actually furnished.

75. The Chase account ending XXXXXXXXXXXX2427, as reported by Trans Union — the same account Equifax reports as ending 6818 — is inaccurate and incomplete in that: (a) payment history from June 2016 through January 2019 is missing entirely; (b) payment history from September 2025 through December 2025, the exact period during which Plaintiff was making the structured settlement payments described above, is

missing entirely; (c) Trans Union's own records nonetheless independently confirm the account's resolution — reflecting a Date Paid of December 31, 2025 and a status of "Paid, Closed; was Paid as agreed," consistent with Chase's own settlement records — a correct outcome that stands in stark contrast to Equifax's contemporaneous reporting of the same, already-settled account as carrying a balance climbing back toward its full original $2,995.13 pre-settlement amount through April 2026, described above; and (d) the account is reported inconsistently compared to how Chase reported the same tradeline to Equifax, in addition to the discrepancies above.

76. The Navy Federal account ending XXXXXXXXXXXX4266, as reported by Trans Union — the same real-world account Navy Federal reports to Equifax as ending 6070 and to Experian as ending 6095, confirmed by an identical November 14, 2016 date-opened — is inaccurate and incomplete in that: (a) payment history from November 2016 through June 2019 is missing entirely; (b) Trans Union's own report independently corroborates that the $589 figure discussed above (as reported by Equifax) is a recurring monthly settlement payment, not the account balance: Trans Union separately lists $589 under "Amount Paid" for June and August 2026 while reporting the balance itself at $11,020 (June 2026) and $10,750 (August 2026) — a balance Experian, reporting the identical account, independently and exactly corroborates at $10,750 (updated August 24, 2026), and Equifax closely corroborates at $10,593 (July 2026); (c) Trans Union's own payment-history grid rates the account only 30 days late in September 2025 and July 2026, while Equifax rates the identical months 60 days late — a direct cross-bureau conflict Experian resolves in Trans Union's favor, independently rating September 2025 as 30 days late as well, described above; and (d)

the account is reported inconsistently compared to how Navy Federal reported the same tradeline to Equifax and Experian, in addition to the discrepancies above.

77. The Upstart account ending XXXXXXXXXXXX175, as reported by Trans Union, is inaccurate and incomplete only insofar as it is reported inconsistently compared to how Upstart reported the same tradeline to Equifax: Trans Union's own report accurately and consistently reflects the account's May 1, 2026 resolution — a $0 balance, a "Payment Received" of $6,433, a pay status of "Account paid in Full was a Charge-off," and a remark of "Settled-Less Than Full Blnc; Paid in Full/Was a Charge Off" — while Equifax's report of the identical account, described above, was never updated to reflect that same resolution and simply stops reporting data after April 2026. Trans Union's accurate reporting of this account is what makes Equifax's failure to update its own report demonstrable.

**AMERICAN EXPRESS'S INVESTIGATION FAILURES**

78. Plaintiff disputed these accounts to Experian, Equifax, and Trans Union on or about June 14, 2026.

79. Plaintiff disputed the account ending XXXXXXXXXXXX6013, the account ending XXXXXXXXXXXX6323, the account ending XXXXXXXXXXXX3225, and the account ending XXXXXXXXXXXX7795, furnished by American Express, with Experian, Equifax, and Trans Union, each of whom forwarded the dispute to American Express.

80. Once a consumer reporting agency provides notice of a dispute to a furnisher such as American Express, 15 U.S.C. § 1681s-2(b) obligates American Express to conduct a

reasonable investigation of the dispute, to review all relevant information forwarded to it, and to report the results back to the consumer reporting agency.

81. That duty includes the obligation to mark the account as disputed so that the account is reported accurately and completely during the investigation. American Express was required either to make each account accurate and complete or to delete it; the FCRA does not permit American Express to investigate and leave an account inaccurate or incomplete.

82. The information American Express reported also had to be verified as accurate and complete. If American Express could not verify the information, its only lawful option was to delete the account. See Longman v. Wachovia Bank, N.A., 702 F.3d 148, 151 (2d Cir. 2012) (furnishers have a "duty to reasonably investigate and verify that the information is accurate").

83. As to the accounts ending 6013 and 6323 specifically, American Express's own account records — reflected in the debt-settlement program Plaintiff enrolled in through Beyond Finance — confirm that the account ending 6323 was resolved and paid in full for $853.54 (against a pre-settlement balance of $1,696.90) as of June 22, 2026, a resolution Trans Union has already incorporated into its reporting of the same tradeline (ending 7795) while Experian has not; and that the account ending 6013 is being paid down under a structured settlement of $3,385.37 (against a pre-settlement balance of $4,815.61), with a true current balance of $1,974.77 as of August 2026 — the exact figure Beyond Finance's own payment ledger documents after crediting each of Plaintiff's ten $141.06 payments made between November 20, 2025 and August 20,

2026. Equifax, Trans Union, and Experian each nonetheless independently report the identical account at the identical, uncredited balance of $3,405 as of the identical date, August 28, 2026 — a figure that simply ignores the $1,410.60 Plaintiff has actually paid and Beyond Finance has actually recorded. A balance that does not reflect a consumer's actual, documented payment history is not the current, accurate status the FCRA requires, whatever the account's pre-settlement or contractual balance may once have been. Equifax's and Experian's continued reporting of these two accounts as carrying the original, unresolved balances or unexplained derogatory marks is directly contradicted by American Express's own settlement and payment records for these accounts.

84. The errors in American Express's reporting described above were, upon information and belief, identifiable from the face of the dispute and American Express's own account records, yet American Express failed to correct them.

85. Plaintiff alleges, upon information and belief and as permitted in the alternative under Fed. R. Civ. P. 8(d), that American Express either conducted no investigation of Plaintiff's dispute, or conducted an investigation that did not satisfy the reasonableness standard of 15 U.S.C. § 1681s-2(b) because it failed to correct information that was inaccurate, incomplete, or unverifiable.

86. Had American Express conducted a reasonable investigation, it would more likely than not have discovered the inaccuracies described above and corrected or updated the affected tradelines with all consumer reporting agencies to which American Express furnished them, or deleted those tradelines where the disputed information could not be verified.

See Suluki v. Credit One Bank, N.A., 138 F.4th 709, 720 (2d Cir. 2025) (plaintiff must show that a reasonable investigation would have led to a different result).

87. American Express knew, from the consumer reporting agencies' notices, that Plaintiff disputed these accounts, yet failed to mark them as disputed as the FCRA requires. An account report that omits a known, pending dispute is itself incomplete, because the report can be accurate only if it reflects that the account is disputed.

88. American Express continued reporting the same, unchanged data to the consumer reporting agencies after receiving notice of Plaintiff's dispute and after the statutory reinvestigation period had run, without marking the accounts as disputed.

89. The bottom line is that American Express failed to properly investigate Plaintiff's dispute and failed to mark the accounts as disputed, each of which independently violates 15 U.S.C. § 1681s-2(b). Users of Plaintiff's consumer reports accessed those reports after American Express failed to do either.

**DISCOVER'S INVESTIGATION FAILURES**

90. Plaintiff disputed these accounts to Experian, Equifax, and Trans Union on or about June 14, 2026.

91. Plaintiff disputed the account ending XXXXXXXXXXXX1100, the account ending XXXXXXXXXXXX3011, and the account ending XXXXXXXXXXXX1180, furnished by Discover, with Experian, Equifax, and Trans Union, each of whom forwarded the dispute to Discover.

92. Once a consumer reporting agency provides notice of a dispute to a furnisher such as Discover, 15 U.S.C. § 1681s-2(b) obligates Discover to conduct a reasonable investigation of the dispute, to review all relevant information forwarded to it, and to report the results back to the consumer reporting agency.

93. That duty includes the obligation to mark the account as disputed so that the account is reported accurately and completely during the investigation. Discover was required either to make each account accurate and complete or to delete it; the FCRA does not permit Discover to investigate and leave an account inaccurate or incomplete.

94. The information Discover reported also had to be verified as accurate and complete. If Discover could not verify the information, its only lawful option was to delete the account. See Longman v. Wachovia Bank, N.A., 702 F.3d 148, 151 (2d Cir. 2012) (furnishers have a "duty to reasonably investigate and verify that the information is accurate").

95. As to the account ending 3011 (Equifax) / 1100 (Experian) / 1180 (Trans Union) specifically, Trans Union's and Experian's independent and consistent reporting of a 30-days-late entry for April 2026 on this identical tradeline establishes what the correct April 2026 status was and, by the same token, establishes that Equifax's report — which omits any late mark near April 2026 at all — is missing furnisher-supplied delinquency data that reached two of the three nationwide consumer reporting agencies.

96. The errors in Discover's reporting described above were, upon information and belief, identifiable from the face of the dispute and Discover's own account records, yet Discover failed to correct them.

97. Plaintiff alleges, upon information and belief and as permitted in the alternative under Fed. R. Civ. P. 8(d), that Discover either conducted no investigation of Plaintiff's dispute, or conducted an investigation that did not satisfy the reasonableness standard of 15 U.S.C. § 1681s-2(b) because it failed to correct information that was inaccurate, incomplete, or unverifiable.

98. Had Discover conducted a reasonable investigation, it would more likely than not have discovered the inaccuracies described above and corrected or updated the affected tradelines with all consumer reporting agencies to which Discover furnished them, or deleted those tradelines where the disputed information could not be verified. See Suluki v. Credit One Bank, N.A., 138 F.4th 709, 720 (2d Cir. 2025) (plaintiff must show that a reasonable investigation would have led to a different result).

99. Discover knew, from the consumer reporting agencies' notices, that Plaintiff disputed these accounts, yet failed to mark them as disputed as the FCRA requires. An account report that omits a known, pending dispute is itself incomplete, because the report can be accurate only if it reflects that the account is disputed.

100. Discover continued reporting the same, unchanged data to the consumer reporting agencies after receiving notice of Plaintiff's dispute and after the statutory reinvestigation period had run, without marking the accounts as disputed.

101. The bottom line is that Discover failed to properly investigate Plaintiff's dispute and failed to mark the accounts as disputed, each of which independently violates 15 U.S.C. § 1681s-2(b). Users of Plaintiff's consumer reports accessed those reports after Discover failed to do either.

## CHASE'S INVESTIGATION FAILURES

102.Plaintiff disputed these accounts to Experian, Equifax, and Trans Union on or about June 14, 2026.

103.Plaintiff disputed the account ending XXXXXXXXXXXX6684, the account ending XXXXXXXXXXXX4720, the account ending XXXXXXXXXXXX2141, the account ending XXXXXXXXXXXX6818, the account ending XXXXXXXXXXXX8449, and the account ending XXXXXXXXXXXX2427, furnished by Chase, with Experian, Equifax, and Trans Union, each of whom forwarded the dispute to Chase.

104.Once a consumer reporting agency provides notice of a dispute to a furnisher such as Chase, 15 U.S.C. § 1681s-2(b) obligates Chase to conduct a reasonable investigation of the dispute, to review all relevant information forwarded to it, and to report the results back to the consumer reporting agency.

105.That duty includes the obligation to mark the account as disputed so that the account is reported accurately and completely during the investigation. Chase was required either to make each account accurate and complete or to delete it; the FCRA does not permit Chase to investigate and leave an account inaccurate or incomplete.

106.The information Chase reported also had to be verified as accurate and complete. If Chase could not verify the information, its only lawful option was to delete the account. See Longman v. Wachovia Bank, N.A., 702 F.3d 148, 151 (2d Cir. 2012) (furnishers have a "duty to reasonably investigate and verify that the information is accurate").

107.As to the account ending 6818 specifically, Chase's own account records — reflected in the debt-settlement program Plaintiff enrolled in through Beyond Finance — confirm that

this account was resolved and paid in full for $1,498.00 (against a pre-settlement balance of $2,995.13) as of December 31, 2025, a resolution Trans Union's reporting of the same tradeline (ending 2427) independently corroborates. Equifax's continued reporting of this same account as carrying a balance climbing back toward its full original pre-settlement amount for five months after that payoff is directly contradicted by Chase's own settlement and payoff records, as well as by Trans Union's accurate reporting of the identical tradeline. Non-party Experian's own report of this identical account (ending 6684) independently confirms that Chase's reporting failure was not limited to the Defendant bureaus: as of September 6, 2026, Experian shows the account's status unchanged since September 2025 — three months before Chase's own records show the account was actually resolved on December 31, 2025 — with its balance, balance-updated, and monthly-payment fields left blank altogether, confirming Chase never furnished Experian a corrected report either. Chase's related account ending 4720 (reported to Experian as the same tradeline Chase reports to Equifax as ending 2141 and to Trans Union as ending 8449) shows the identical pattern: Experian confirms no monthly-payment figure has ever been furnished for that account and that its status has not been updated since February 2026, despite the dispute — demonstrating that Chase's failure to update spans every consumer reporting agency it furnishes to, not merely the Defendants named in this action.

108. The errors in Chase's reporting described above were, upon information and belief, identifiable from the face of the dispute and Chase's own account records, yet Chase failed to correct them.

109. Plaintiff alleges, upon information and belief and as permitted in the alternative under Fed. R. Civ. P. 8(d), that Chase either conducted no investigation of Plaintiff's dispute, or conducted an investigation that did not satisfy the reasonableness standard of 15 U.S.C. § 1681s-2(b) because it failed to correct information that was inaccurate, incomplete, or unverifiable.

110. Had Chase conducted a reasonable investigation, it would more likely than not have discovered the inaccuracies described above and corrected or updated the affected tradelines with all consumer reporting agencies to which Chase furnished them, or deleted those tradelines where the disputed information could not be verified. See Suluki v. Credit One Bank, N.A., 138 F.4th 709, 720 (2d Cir. 2025) (plaintiff must show that a reasonable investigation would have led to a different result).

111. Chase knew, from the consumer reporting agencies' notices, that Plaintiff disputed these accounts, yet failed to mark them as disputed as the FCRA requires. An account report that omits a known, pending dispute is itself incomplete, because the report can be accurate only if it reflects that the account is disputed.

112. Chase continued reporting the same, unchanged data to the consumer reporting agencies after receiving notice of Plaintiff's dispute and after the statutory reinvestigation period had run, without marking the accounts as disputed.

113. The bottom line is that Chase failed to properly investigate Plaintiff's dispute and failed to mark the accounts as disputed, each of which independently violates 15 U.S.C. § 1681s-2(b). Users of Plaintiff's consumer reports accessed those reports after Chase failed to do either.

## NAVY FEDERAL'S INVESTIGATION FAILURES

114. Plaintiff disputed these accounts to Experian, Equifax, and Trans Union on or about June 14, 2026.

115. Plaintiff disputed the account ending XXXXXXXXXXXX6095, the account ending XXXXXXXXXXXX6070, and the account ending XXXXXXXXXXXX4266, furnished by Navy Federal, with Experian, Equifax, and Trans Union, each of whom forwarded the dispute to Navy Federal.

116. Once a consumer reporting agency provides notice of a dispute to a furnisher such as Navy Federal, 15 U.S.C. § 1681s-2(b) obligates Navy Federal to conduct a reasonable investigation of the dispute, to review all relevant information forwarded to it, and to report the results back to the consumer reporting agency.

117. That duty includes the obligation to mark the account as disputed so that the account is reported accurately and completely during the investigation. Navy Federal was required either to make each account accurate and complete or to delete it; the FCRA does not permit Navy Federal to investigate and leave an account inaccurate or incomplete.

118. The information Navy Federal reported also had to be verified as accurate and complete. If Navy Federal could not verify the information, its only lawful option was to delete the account. See Longman v. Wachovia Bank, N.A., 702 F.3d 148, 151 (2d Cir. 2012) (furnishers have a “duty to reasonably investigate and verify that the information is accurate”).

119. As to the account ending 6070 specifically, Navy Federal's own account records — reflected in the debt-settlement program Plaintiff enrolled in through Beyond Finance — confirm

that this account is being paid down under a structured settlement of $7,037.71 against a pre-settlement balance of $15,157.69. All three consumer reporting agencies independently corroborate one another that the $589 figure otherwise associated with this account is the recurring monthly settlement payment, not the balance: Equifax reports a balance of $10,593 (July 2026), and Trans Union and Experian each independently report the identical balance of $10,750 (August 2026), with the precise figure to be confirmed against the original Beyond Finance settlement statement before filing. Equifax's, Trans Union's, and Experian's continued reporting of a balance in the $10,000-plus range is directly contradicted by any pleading or notation treating $589 as the current balance.

120. The errors in Navy Federal's reporting described above were, upon information and belief, identifiable from the face of the dispute and Navy Federal's own account records, yet Navy Federal failed to correct them.

121. Plaintiff alleges, upon information and belief and as permitted in the alternative under Fed. R. Civ. P. 8(d), that Navy Federal either conducted no investigation of Plaintiff's dispute, or conducted an investigation that did not satisfy the reasonableness standard of 15 U.S.C. § 1681s-2(b) because it failed to correct information that was inaccurate, incomplete, or unverifiable.

122. Had Navy Federal conducted a reasonable investigation, it would more likely than not have discovered the inaccuracies described above and corrected or updated the affected tradelines with all consumer reporting agencies to which Navy Federal furnished them, or deleted those tradelines where the disputed information could not be verified. See